## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| | * | **Case No. 19-cr-00506-RDB-6** |
| **v.** | * | |
| | * | |
| | * | |
| **JAWUAN BOLLING** | * | |
| | * | |
| | * | |
| **Defendant** | * | |

\*\*\*\*\*\*\*\*\*\*\*\*

### MEMORANDUM OPINION AND ORDER OF COURT

This matter is before the Court on the defendant's Motion for Review of Detention Status (the "Motion") (ECF No. 81) and the government's Response to Motion for Review of Detention Status (the "Response") (ECF No. 83).  The issues have been fully briefed, and no hearing is necessary.  L.R. 105.6, 207.  For the reasons stated below, the Motion is **DENIED.**

### I.  PROCEDURAL HISTORY

On November 7, 2019, the grand jury returned a first superseding indictment charging the defendant with Interference with Commerce by Robbery, in violation of 18 U.S.C. § 1951(a). The defendant appeared for his initial appearance on November 8, 2019.  On January 10, 2020, the defendant appeared before this Court for a detention hearing.

### II.  DETENTION HEARING

After hearing from the parties at the detention hearing, the Court reviewed the factors set forth in 18 U.S.C. § 3142(g) and found by clear and convincing evidence that the defendant posed a risk to the safety of the community and that there was no condition or combination of conditions that would reasonably assure community safety.  Therefore, the Court ordered that the

defendant be detained.  *See* Order of Detention (ECF No. 67).  The defendant is presently housed

at the Chesapeake Detention Facility ("CDF") in Baltimore.

III. THE § 3142(g) FACTORS

> Under 18 U.S.C. § 3142(f), a detention hearing

> may be reopened, before or after a determination by the judicial officer, at any
> time before trial if the judicial officer finds that information exists that was not
> known to the movant at the time of the hearing and that has a material bearing on
> the issue whether there are conditions of release that will reasonably assure the
> appearance of such person as required and the safety of any other person and the
> community.

The defendant requests that the Court review the Order of Detention based on "material change

in circumstances stemming from the Covid-19 pandemic and the threat to the Defendant's safety

while incarcerated as well as the inability to be tested and/or to be isolated from others who

could potentially be infected with the virus."  The defendant asserts that he has a stable place to

live if released to a third-party custodian and would be employed upon release.  *See* Motion

(ECF No. 81 at 1).  Notably, unlike many other detainees who have recently filed motions for

release in this Court, the defendant does not claim that, because of a particular physical or mental

condition, or advanced age, he is at an increased risk of contracting the virus or suffering severe

complications if he does.[1]  *See, e.g.*, *United States v. Wheeler*, Criminal Case No. CCB-19-0455,

2020 WL 2085473 (D. Md. Apr. 30, 2020) (asthma, COVID-19, diabetes); *United States v. Lee*,

No. ELH-19-159, 2020 WL 1974881 (D. Md. Apr. 24, 2020) (high blood pressure, obesity,

depression*)*; *United States v. Green*, Criminal Case No. CCB-19-0539-1, 2020 WL 1873967 (D.

Md. Apr. 15, 2020) (asthma, high blood pressure, chronic obstructive pulmonary disease);

*United States v. Williams*, Criminal Case No. PWG-13-544, 2020 WL 1434130 (D. Md. Mar. 24,

---

[1] No medical records were submitted in support of the Motion.  Because the defendant does not
claim that he has a specific physical or mental condition that puts him at a greater risk of
contracting COVID-19, the Court does not find it necessary to obtain his medical records.

2020) (advanced age); *United States v. Bilbrough,* Criminal Case No. TDC-20-0033 (D. Md. Mar. 20, 2020) (diabetes), *aff'd*, 2020 WL 1694362 (D. Md. Apr. 7, 2020); *United States v. Martin*, Criminal Case No. PWG-19-140-13, 2020 WL 1274857 (D. Md. Mar. 17, 2020) (diabetes, high blood pressure, asthma).   Rather, the defendant relies primarily upon a generalized risk of exposure and contraction of COVID-19.

COVID-19 is a worldwide pandemic that has had a profound impact on the health and daily life of millions of people.  In the recent case of *Coreas v. Bounds*, Civil Action No. TDC-20-0780, 2020 WL 1663133 (D. Md. Apr. 3, 2020), United States District Judge Theodore D. Chuang summarized the nature of the virus, the risks of exposure to it, and the steps employed by local governments and communities to curtail its spread:

> The virus identified as SARS-CoV-2, commonly referred to as the novel coronavirus ("the Coronavirus"), has caused a global pandemic of the condition known as COVID-19.  As of April 3, 2020, there were 932,166 confirmed cases and 46,764 deaths worldwide. *Coronavirus Disease (COVID-19) Pandemic*, World Health Org., https://www.who.int/emergencies/diseases/novel-coronavirus-2019.  As of April 2, 2020, there were 213,144 confirmed cases and 4,513 deaths in the United States. *Cases in U.S.*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.  The Centers for Disease Control and Prevention ("CDC") has projected that, without effective public health intervention, about 200 million people in the United States may contract the disease, and, under some projections, as many as 1.5 million people in the United States may die from the disease.  Another organization's projection puts the potential number of American fatalities at 2.2 million.  Moreover, some evidence suggests that, even when not fatal, COVID-19 results in long-term, serious illnesses, which may include severe damage to internal organs, in about 16 percent of cases.
>
> COVID-19 poses special risks for the elderly and those with certain preexisting medical conditions. *Amici Curiae* Public Health and Human Rights Experts Br. at 6-7, ECF No. 32.  The CDC has identified several medical conditions that place an individual at an increased risk of serious COVID-19 complications: "blood disorders, chronic kidney or liver disease, compromised immune system, endocrine disorders, including diabetes, metabolic disorders, heart and lung disease, neurological[,] neurologic and neurodevelopmental conditions, and current or recent pregnancy." Greifinger Decl. ¶ 7, Reply Mot. TRO ("Reply") Ex. 6, ECF No. 52-6.  Of those who have died from COVID-19 in

3

Italy, another country experiencing a high number of COVID-19 cases, about three-fourths had high blood pressure, one-third had diabetes, and one-third had heart disease. According to Dr. Jonathan Louis Golob, an Assistant Professor at the University of Michigan School of Medicine, there is evidence that in the highest risk populations, COVID-19 causes death in about 15 percent of cases. Preliminary data from China has shown that 20 percent of COVID-19 cases involving high-risk categories have resulted in death.

There is no vaccine, antiviral treatment, or cure for COVID-19. The Coronavirus is believed to spread through "droplets" that can be transmitted during close interpersonal contact, though these droplets can also survive on surfaces for days and spread the disease even absent such close contact. *Id.* ¶ 21. There is some evidence that individuals with the Coronavirus can transmit it to others even when they are not yet symptomatic. Public health measures aiming to stop the spread of the virus—most notably the practice of social distancing—have been widespread: "[s]chools, courts, collegiate and professional sports, theater and other congregate settings have been closed," *id.* ¶ 8, and many states have issued mandatory social distancing polices. The Governor of Maryland issued a stay-at-home order on March 30, 2020. *See* Order of the Governor of the State of Maryland § II, No. 20-03-30-01 (Mar. 30, 2020), https://governor.maryland.gov/wp-content/uploads/2020/03/Gatherings-FOURTH-AMENDED-3.30.20.pdf. As of April 2, 2020, 40 states and the District of Columbia had issued stay-at-home or shelter-in-place orders. *See These States Have Implemented Stay-at-Home Orders*, CNN (Apr. 2, 2020), https://www.cnn.com/2020/03/23/us/coronavirus-which-states-stay-at-home-order-trnd/index.html.

*Coreas*, 2020 WL 1663133, at \*1-2.

Judge Chuang also reviewed the vulnerabilities of persons detained in jails and detention

facilities caused by COVID-19:

Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19. First, even if these facilities suspend in-person visitation, the staff, contractors, and vendors working at the facilities can still introduce the Coronavirus into the facility, a risk that is all the more difficult to contain because asymptomatic individuals can transmit the virus and because these facilities lack the capacity to screen for the virus in asymptomatic individuals. According to Petitioners' expert, Dr. Robert B. Greifinger, an expert on prison and jail health care and the former manager of medical care for the New York State prison system, "[j]ails and detention centers are congregate environments where the risk of infection and infectious spread are extraordinarily high." Greifinger Decl. ¶¶ 1-2, 16. Indeed, there have already been confirmed outbreaks of COVID-19 at several prisons and detention facilities across the United States, including the Rikers Island detention facility in New York City, the Cook County Jail in

Chicago, Illinois, and the federal prison in Oakdale, Louisiana, as well as certain New Jersey jails housing ICE detainees. In this region, COVID-19 has been identified in the Clifton T. Perkins Hospital Center, a psychiatric hospital in Jessup, Maryland; and the D.C. Jail in Washington, D.C.

Second, once the Coronavirus is introduced into a detention facility, the nature of these facilities makes the mitigation measures introduced elsewhere in the country difficult or impossible to implement. Detention facilities often lack personal protective equipment that helps prevent the transmission of the virus. Shared facilities, such as bathrooms, dining halls, and telephones, are often not disinfected between uses. Poor ventilation increases the risk of transmission. Detained individuals are often not given the opportunity or tools to wash or sanitize their hands frequently. And the crowded nature of the facilities can make social distancing recommended by the CDC impossible.

*Id.* at *2.

The Court finds that the unprecedented magnitude of the COVID-19 pandemic and the heightened risk of exposure to residents of detention facilities constitute information not known to the defendant at the time of the detention hearing that has a material bearing on whether conditions of release can be fashioned to assure the appearance of the defendant as required and the safety of the community. *See, e.g.*, *Bilbrough*, Order at 4 (D. Md. Mar. 20, 2020); *Martin*, 2020 WL 1274857, at *2. Therefore, the defendant has established a satisfactory basis to reopen the detention hearing. The Court now again reviews the factors set forth in 18 U.S.C. § 3142(g), including the new information identified by the defendant, to determine if there are conditions of release that could be fashioned to assure the defendant's appearance as required and the safety of the community.

The defendant does not challenge the Court's original findings with respect to the four § 3142(g) factors. Regarding the first factor, the Court again notes that the defendant is charged with a crime of violence. The weight of the evidence against the defendant is strong. According to the government's proffer, on April 25, 2019, five individuals forced their way into a residential apartment wielding firearms, assaulted several residents in the apartment, and stole a

quantity of suboxone and cash.  The incident was captured on surveillance video from within the apartment.  Although the government does not allege that the defendant was one of the assailants who entered the apartment, the government does allege that the defendant drove one or more of the assailants to and from the robbery.  This allegation is substantiated by video surveillance of the defendant's vehicle outside the apartment building and by location data obtained from his cell phone.  *See* Response (ECF No. 83 at 3-9).

Concerning the third factor, the Court reviewed the Pretrial Services report that summarized the defendant's residential history and family ties, his employment history and financial resources, his health, and his criminal history.  Notably, the defendant was convicted of armed robbery in January 2016.  He was placed on three years' supervised probation, which expired in January 2019, about three months before the present alleged offense.  Finally, for the same reasons discussed at the detention hearing, the Court affirms its prior finding that the defendant would pose a danger to the community if released, based on the strong evidence against him in this case and the fact that the alleged offense occurred just a few months after his probation expired in a prior armed-robbery case.

The question now is whether the Court's prior finding, that there are no conditions of release that would assure the safety of the community, should be changed based on the defendant's generalized risk of contracting COVID-19 while detained and his plan to be released to a third-party custodian.  The defendant does not assert that he has a health condition that heightens his risk of contracting COVID-19 or suffering severe complications if he does.  He does not claim that he has tested positive for the virus or has been exposed to anyone who has. He does not aver that he has had any health issues that have not been properly treated.  As the government points out, comprehensive precautionary measures have been implemented at CDF

Case 1:19-cr-00506-RDB   Document 89   Filed 05/11/20   Page 7 of 8

to limit the risk of exposure to the virus inside the facility. *See* Response (ECF No. 83 at 11-12). The defendant generally argues that his safety is threatened because of an inability to be tested and/or isolated from others who could potentially be infected with the virus. *See* Motion (ECF No. 81 at 1). He does not offer details, however, of his particular situation within CDF that puts him at increased risk or subjects him to inadequate protocols for screening, testing, quarantining, and treatment.

The defendant proposes that his girlfriend be appointed third-party custodian and that he be required to reside with her. She is willing to accommodate location monitoring. The defendant, however, does not provide important information regarding the conditions of that proposed residence – its size, the number of people residing there, whether any of the other residents have compromising medical conditions, or how quarantine or social distancing can be accomplished. Simply stated, the release plan offered does not sufficiently assure the safety of the community.

In summary, the defendant has established grounds to reopen the detention hearing based on the new information concerning the risk of contracting COVID-19 because of his detention at CDF. Nonetheless, after reviewing the factors contained in 18 U.S.C. § 3142(g), including the new information, the Court again finds by clear and convincing evidence that there is no condition or combination of conditions of release that will reasonably assure the safety of the community. When balanced against the § 3142(g) factors, the risk that the COVID-19 virus poses to the defendant, given his health and current COVID-19 situation at CDF, does not compel his release.

## **ORDER**

Accordingly, it is this 11th day of May 2020, hereby **ORDERED** that the defendant's

Motion for Review of Detention Status (ECF No. 81) is **DENIED**.


Date: May 11, 2020                                                      /s/

                                                                  Thomas M. DiGirolamo
                                                                  United States Magistrate Judge